United States District Court
Middle District of Florida
Jacksonville Division

**D.L., ON BEHALF OF L.R.,**

***Plaintiff,***

**v.** **NO. 3:25-cv-1089-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

***Defendant.***

---

# Order

The plaintiff requests review of the Commissioner of Social Security's final decision denying a child's application for Supplemental Security Income. Doc. 1. The plaintiff argues that the Administrative Law Judge (ALJ) erred by failing to find that the child had an "extreme" limitation in the domain of "health and physical well-being." Doc. 18 at 7. The record and the general law are summarized in the decision, Tr. 30–38, and the parties' briefs, Docs. 18, 19, and not fully repeated here.

The court has jurisdiction under 42 U.S.C. § 405(g), which details the scope of review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner … or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner …, because of failure of the claimant or such individual to submit proof in conformity with any

> regulation prescribed …, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g); *see id.* § 1383(c)(3) (incorporating § 405(g) for Supplemental Security Income). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoted authority omitted).

In determining whether a child is disabled, the agency evaluates the "whole child" by considering how she functions at home, at school, and in the community; the interactive and cumulative effects of her medically determinable impairment on her activities; and the type, extent, and frequency of help she needs. Social Security Ruling (SSR) 09-1p, 74 Fed. Reg. 7527 (Feb. 17, 2009). The agency considers how the child functions in six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for [her]self, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A child is disabled if she has "marked" limitations in two domains of functioning or an "extreme" limitation in one. *Id.* § 416.926a(a).

A child has a "marked" limitation in a domain of functioning if her impairment "interferes seriously" with her "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). Day-to-day functioning may be "seriously limited" if the child's impairment "limits only one activity" or if "the interactive and cumulative effects" of her impairment limit "several activities." *Id.* A "marked" limitation "also means a limitation that is 'more than moderate' but 'less than extreme.'" *Id.* "It is the equivalent of the

functioning [the agency] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*

For the "health and physical well-being" domain, the agency may also consider a child to have a "marked" limitation if she is "frequently ill" because of her impairment or has "frequent exacerbations" of her impairment resulting in "significant, documented symptoms or signs." *Id.* § 416.926a(e)(2)(iv); *see also* SSR 09-8p, 74 Fed. Reg. 7524 (Feb. 17, 2009). For this domain, "frequent means that [the child has] episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more." 20 C.F.R. § 416.926a(e)(2)(iv). The agency may also consider a child to have a "marked" limitation if she has "episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity." *Id.*

A child has an "extreme" limitation in a domain of functioning if her impairment "interferes very seriously" with her "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). Day-to-day functioning may be "very seriously limited" if the child's impairment "limits only one activity" or if "the interactive and cumulative effects" of her impairment limit "several activities." *Id.* An "extreme" limitation "also means a limitation that is 'more than marked.'" *Id.* An "extreme" limitation is the rating the agency gives "to the worst limitations." *Id.* Still, "'extreme limitation' does not necessarily mean a total lack or loss of ability to function." *Id.* "It is the equivalent of the functioning [the agency] would expect to find on

standardized testing with scores that are at least three standard deviations below the mean." *Id.*

For the "health and physical well-being" domain, the agency may also consider a child to have an "extreme" limitation if she is "frequently ill" because of her impairment or has "frequent exacerbations" of her impairment resulting in "significant, documented symptoms or signs substantially in excess of the requirements for showing a 'marked' limitation[.]" *Id.* § 416.926a(e)(3)(iv); *see also* SSR 09-8p, 74 Fed. Reg. 7524 (Feb. 17, 2009). If the child has episodes of illness or exacerbations of her impairment that the agency rates as "extreme," the impairment "should meet or medically equal the requirements of a listing in most cases." 20 C.F.R. § 416.926a(e)(3)(iv).

Contrary to the plaintiff's argument, the following evidence on which the ALJ relied constitutes substantial evidence supporting the ALJ's finding that the child has a "marked," rather than an "extreme," limitation in the "health and physical well-being" domain:

- "No treating or examining physician has made findings equivalent in severity to the criteria of any listed impairment[.]" Tr. 32.
- The child's mother testified that the child "had cardiac problems as a baby but is now largely doing well." Tr. 33; *see* Tr. 89–90. The child has attention deficit hyperactivity disorder, but is not on medication. Tr. 33; *see* Tr. 90. The child completed kindergarten and is entering first grade. Tr. 33; *see* Tr. 90.
- The child has a "history of congenital heart disease diagnosed prenatal[ly] with required surgical repair of [her] aortic coarctation in November 2017 when [she] was only a few weeks old. At the most recent follow-up with UF Health Congenital Heart Center, the [child] continued to have stable cardiac findings, and [her] aortic arch remained patent." Tr. 33 (internal citation omitted); *see* Tr. 4471.

- "Holter monitoring testing was normal." Tr. 33; *see* Tr. 4367.
- The child's cardiologist indicated that the child had no specific activity restrictions. Tr. 33; *see* Tr. 4471.
- The child "continues to require yearly visits to monitor for signs or symptoms of re-coarctation of the aorta." Tr. 33; *see* Tr. 4471.
- The child has mild genu varus in the knees and a leg-length discrepancy "with the right leg slightly longer, by .4 cm, than the left," which results in intermittent left-leg pain, left-sided lower extremity weakness, and a deviated gait with occasional toe-ing. Tr. 33; *see* Tr. 4343–44.
- The child "received physical and occupational therapy to improve toe-walking." Tr. 33; *see* Tr. 4277, 4469.
- Genetic testing revealed a DIP2C mutation, a finding that is neither diagnostic nor medically actionable because the mutation variant is of uncertain significance. The child will be monitored over time. Tr. 34; *see* Tr. 4327–28.
- The child has juvenile idiopathic arthritis and began taking Enbrel and Celebrex in April 2024. Tr. 34; *see* Tr. 2790, 2793. By October 2024, her fatigue and arthritis symptoms were improving with treatment. Tr. 34; *see* Tr. 4249. Because she is treated with Enbrel, an immunosuppressant, she is more prone to sickness. Tr. 35; *see* Tr. 4199.
- The child underwent a neurology evaluation, "including a study at the UF Epilepsy Monitoring Unit due to reports of restless sleep and staring spells. [She] was found to have increased electrical activity in the parieto-temporal region[,] but there was no clinical correlation. Specific seizure treatment was not recommended. [Considering] the seizure-like activity, seizure precautions, such as avoiding heights or climbing trees[, were] recommended." Tr. 34; *see* Tr. 4256–57.
- The child underwent a consultative medical examination by Dr. Aleem Malik, M.D., in August 2024. Tr. 34; *see* Tr. 4193–4203. The examination was largely unremarkable. Tr. 34; *see* Tr. 4193–4203.

The child was found to have reduced muscle strength on repetitive testing. Tr. 34; *see* Tr. 4196, 4198.

- The child has vitiligo, "which has not resulted in specific physical limitations but has caused some anxiety and self-consciousness." Tr. 34; *see* Tr. 4194.

- The child "underwent an evaluation at the UF Health Pediatrics Development and Behavioral Clinic to clarify the … diagnoses and provide therapeutic and educational recommendations." Tr. 34; *see* Tr. 4204–15. She "was found to have a separation anxiety disorder, generalized anxiety disorder, and adjustment disorder with anxiety. [She] was noted to have difficulties separating from her mother[,] which has impacted the quality of her relationships with other family members and negatively impacted her sleep." Tr. 34; *see* Tr. 4208–09.

- The child was "struggling with the impact of her medical conditions[,] which was negatively impacting her functioning." Tr. 34; *see* Tr. 4209.

- The child has anxiety that she cannot always control. Tr. 34; *see* Tr. 4209.

- "The UF Health Pediatrics Development and Behavioral Clinic evaluation … contains information from the [child]'s teachers." Tr. 34; *see* Tr. 4214–15. The child's teacher described her as "performing at grade level in most subjects but slightly below in reading." Tr. 34; *see* Tr. 4215. "School absences were the biggest concern." Tr. 34; *see* Tr. 4215. The child's "abilities to make friends, cope with changes, transition between tasks[,] and articulate her needs were above average." Tr. 34; *see* Tr. 4215. The child's teacher described her as a "very caring and hard-working student." Tr. 34; *see* Tr. 4215. "Based on the evaluation, cognitive behavioral therapy was recommended." Tr. 34; *see* Tr. 4209. "Additionally, the [child] was recommended for English Language Learner support (as English is [her] second language)" and "a 504 plan at school[.]" Tr. 34; *see* Tr. 4209–10.

- A "marked" limitation in the "health and physical well-being" domain "is consistent with the opinion of consultative examiner" Dr. Malik. Tr. 35; *see* Tr. 4193–4203.

- Dr. Malik thoroughly examined the child in August 2024, reviewed medical evidence, and found that the child "has a marked limitation in health and physical well-being." Tr. 36; *see* Tr. 4199–4200.

- Dr. Malik's findings generally are supported by the record and his "thorough examination[,] which was largely unremarkable but documented the [child]'s significant medical history and found that [she] had weakness on repetitive testing." Tr. 36; *see* Tr. 4193–4203.

The plaintiff argues that because the child had twenty-seven medically excused absences in a single school year, the child's impairments "very seriously interfere with sustained participation in a core childhood activity," and, therefore, she has an "extreme" limitation in the "health and physical well-being" domain. Doc. 18 at 9–10. The argument is unpersuasive. The ALJ considered absenteeism but also considered that the child was academically on track and moving to the next grade. Tr. 34, 4215, 4268. Likewise, Dr. Malik considered that the child was prone to getting sick and missing school due to the immunosuppressants and that the plaintiff reported the child had been sick about three times a year for two or more weeks, and likewise found a "marked," not an "extreme," limitation. Tr. 4199, 4200. As the Commissioner contends, "Because the marked-versus-extreme inquiry is qualitative and turns on the degree of interference shown by the record as a whole, the ALJ was permitted to weigh absences as one component of the overall functional picture rather than treating absences as outcome-determinative." *See* Doc. 19 at 8 (quoted). Remand is unwarranted.

The Commissioner's final decision is **affirmed**. The clerk is directed to enter judgment for the Commissioner of Social Security and against D.L., on behalf of L.R., and close the file.

**Ordered** in Jacksonville, Florida, on September 1, 2026.

Patricia D. Barksdale
*United States Magistrate Judge*